THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FELIX ORIAKHI, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 07-264 (JBS) |
| v. | |
| BUREAU OF PRISONS, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Mr. Felix Oriakhi
#51338-079
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640
    Plaintiff pro se

CHRISTOPHER J. CHRISTIE
United States Attorney
By:  J. Andrew Ruymann,
     Assistant United States Attorney
402 E. State Street, Suite 430
Trenton, New Jersey 08608

**SIMANDLE**, District Judge:

    Plaintiff Felix Oriakhi, pro se, is a prisoner at the Federal Correctional Institution in Fort Dix, New Jersey (FCI – Fort Dix).  He filed this action pursuant to 28 U.S.C. §§ 1331 and 2672, asserting claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq., and the United States Constitution relating to Defendants' alleged confiscation of his book and gym bag.  Defendants have moved to dismiss and/or for

summary judgment [Docket Item 15].  For the reasons explained below, the Court will grant Defendants' motion.

## I. BACKGROUND

Plaintiff is a federal prisoner at FCI – Fort Dix.  (Compl. ¶ 1.)  He filed the instant lawsuit to address two separate, allegedly unlawful incidents that occurred between January 2006 and May 2006: the BOP's interception of a book that Plaintiff ordered, and Defendant Yeoman's[1] confiscation of Plaintiff's gym bag.  (Id. at ¶¶ 7, 18.)

### A. The Confiscation of Plaintiff's Book

On November 14, 2005, Plaintiff placed an order for two books with publisher Edward R. Hamilton, Bookseller, to be delivered to Plaintiff at FCI – Fort Dix.  (Id. at ¶ 6.)  These two books were entitled Create Your Own Erotic Fantasy and Good Orgasm Guide.  (Id.)  While the first of these books was delivered to Plaintiff at the prison's mail call on January 5, 2006, Plaintiff never received the second book.  (Id. at ¶ 7.)  Plaintiff contacted the publisher to confirm that both books had been shipped, and when he received a receipt confirming the shipment of both books, he was informed in writing by an employee in the prison's mail room that the second book was being reviewed by the prison's legal department.  (Id. at ¶¶ 9-10.)  Plaintiff

---

[1] While Plaintiff filed this action against "Correctional Officer Youman," Defendants have informed the Court that the officer's name is Yeoman.

2

submitted a request to the legal department that the book be delivered to him "immediate[ly]," (id. at ¶ 11), to which the legal department ultimately responded that, pursuant to the Ensign Act, Plaintiff's book had been returned to the publisher because it "is sexually explicit or features nudity."[2] (Id. at ¶ 12.)

    Plaintiff filed an FTCA administrative tort claim form in response to the confiscation of his book. (Id. at ¶ 17.) In addition, on February 25, 2006, Plaintiff filed an "Inmate Request to Staff" form complaining of the confiscation of his book and stating his intent to file suit on account of the prison's alleged violation of his First Amendment rights. (Pl.'s Opp'n Br. Ex. 12.) On August 25, 2006, he received a response from the Northern Regional Office of the BOP informing him that his FTCA claim had been denied. (Pl.'s Opp'n Br. Ex. 1.) Plaintiff appealed this decision to the BOP's General Counsel, and in a response dated September 26, 2006, Harrell Watts, administrator of National Inmate Appeals, informed Plaintiff that the denial of his claim had been upheld. (Pl.'s Opp'n Br. Ex. 13.)

---

[2] It appears that the book was not, in fact, sent back to the publisher, but was instead mailed to Plaintiff's home address in New York. (Compl. ¶ 15.)

**B.    The Confiscation of Plaintiff's Gym Bag**

Plaintiff also alleges that on May 16, 2006, Correctional Officer Yeoman confiscated his athletic bag without providing Plaintiff with a "confiscation form" explaining the reasons for the confiscation. (Compl. ¶¶ 18, 20.)  Plaintiff filed an FTCA administrative tort claim form in response to the confiscation of his gym bag, and on August 25, 2006 – the same day he received a response on his claim concerning the confiscated book[3] – he was informed by the Northern Regional Office of the BOP that his FTCA claim had been denied. (Pl.'s Opp'n Br. Ex. 2.)  Although Plaintiff appealed the denial of his claim concerning the interception of his book to the BOP's General Counsel, Plaintiff does not assert – and there is no evidence in the record to suggest – that he similarly appealed the decision denying his gym bag confiscation claim to the General Counsel's office.

**C.    Procedural History**

Plaintiff filed his Complaint in this matter [Docket Item 1] on January 17, 2007, and on January 24, 2007, the Court issued an Order [Docket Item 2] which, inter alia, granted Plaintiff's application to proceed in forma pauperis and added the United States as a defendant on Plaintiff's Federal Tort Claim. Defendants subsequently filed the instant motion to dismiss

---

[3]  Plaintiff filed two separate complaint forms regarding the two separate confiscation incidents, and received a separate response from the Regional Office for each complaint.

4

and/or for summary judgment [Docket Item 15], to which the Court now turns.

## II. DISCUSSION

### A. Standard of Review

The Court first addresses the standard of review that governs its analysis of Defendants' motion. Defendants have moved for dismissal pursuant to F. R. Civ. P. 12(b)(6) and/or for summary judgment pursuant to F. R. Civ. P. 56. Because both parties go "beyond the face of the pleadings" in their submissions to the Court, Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997), the Court will treat Defendants' submission as a motion for summary judgment.

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be

5

believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255).

**B.   Defendants' Motion for Summary Judgment**

Liberally construing Plaintiff's submissions, United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007), the Court agrees with Defendants that Plaintiff appears to assert four claims: (1) an FTCA claim relating to the alleged confiscation of Plaintiff's book; (2) an FTCA claim relating to the alleged confiscation of Plaintiff's gym bag; (3) a claim that the BOP violated Plaintiff's First Amendment rights by intercepting his book;[4] and (4) a claim that Defendant Yeoman violated Plaintiff's constitutional right to due process by taking Plaintiff's gym bag without providing Plaintiff with a confiscation form.  Plaintiff seeks compensatory and punitive damages from the defendants. (Compl. ¶¶ 31-39.)  The Court addresses Defendants' motion for summary judgment as to each of these claims in turn below.

   1.   Federal Tort Claims

Under the FTCA, United States district courts have jurisdiction over

---

[4] Plaintiff has neither identified, nor named as a defendant, the BOP official who he believes is responsible for having allegedly violated his First Amendment rights.  There is no allegation, evidence, or inference that Defendant Yeoman was responsible for confiscating the book – the book was intercepted by the mail room and detained by the prison's legal department.

> civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).  Although "[t]he FTCA thus waives the government's sovereign immunity with respect to tort claims against the United States for money damages," Fisher Bros. Sales, Inc. v. United States, 46 F.3d 279, 284 (3d Cir. 1995), this waiver is subject to certain exceptions.  See 28 U.S.C. §§ 2680(a)-(n).  Defendants argue that one such exception, the "detention of goods" exception found at subsection (c), is applicable in this case.  That subsection provides in relevant part that § 1346(b) does not apply to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer . . . "  § 2680(c).

The parties vigorously contest whether the confiscation of Plaintiff's book and gym bag fall within the ambit of the detention of goods exception, with Plaintiff arguing that subsection (c) does not apply to officials acting outside of a customs capacity and Defendants arguing that the statutory reference to "any other law enforcement officer" cannot be

7

reconciled with Plaintiff's restrictive reading.  Id. (emphasis added).  After the parties filed their submissions, the Supreme Court issued its opinion in Ali v. Federal Bureau of Prisons, 128 S. Ct. 831 (2008), which resolved the precise question disputed by the parties here.  In holding that subsection (c) exempts claims against prison officers based on the detention of inmates' property from the FTCA's waiver of sovereign immunity, the Court reasoned that "[t]he phrase 'any other law enforcement officer' suggests a broad meaning."  Id. at 835 (quoting § 2680(c)).  The Court determined that "the statute is most consistent and coherent when 'any other law enforcement officer' is read to mean what it literally says," and thus held that section 2680(c) "forecloses lawsuits against the United States for the unlawful detention of property by 'any,' not just 'some,' law enforcement officers."  Id. at 841.

   Ali thus resolves the parties' dispute over the breadth of the FTCA's detention of goods exception in Defendants' favor: the FTCA does not waive the United States' sovereign immunity with respect to Plaintiff's tort claims based on the prison officers' allegedly unlawful detention of his book and gym bag.  Id. "Because a waiver of sovereign immunity is a prerequisite for jurisdiction," In re University Medical Center, 973 F.2d 1065, 1085 (3d Cir. 1992), the Court finds that it lacks subject matter

8

jurisdiction over Plaintiff's FTCA claims, and will grant Defendants' motion as to those claims.

> 2. <u>Constitutional Claims for Money Damages Against the BOP and Officer Yeoman in his Official Capacity</u>

The Court next addresses Defendants' argument that the Court lacks jurisdiction over Plaintiff's constitutional claims against the BOP and Officer Yeoman in his official capacity. Plaintiff's Complaint alleges that the BOP violated his First Amendment rights in confiscating his book, and that the BOP and Officer Yeoman violated his right to due process when Officer Yeoman confiscated Plaintiff's gym bag without providing Plaintiff with a confiscation form. Defendants argue that the BOP and Officer Yeoman in his official capacity are protected by the doctrine of sovereign immunity from suits for damages based on alleged constitutional violations, and, accordingly, they claim that the Court lacks jurisdiction over these claims.

The Court agrees that it lacks jurisdiction over Plaintiff's claims for damages based on alleged constitutional violations committed by the BOP and Officer Yeoman in his official capacity, and will grant Defendants' motion for summary judgment as to those claims. "It is black letter law that the United States cannot be sued without the consent of Congress." <u>Becton Dickinson and Co. v. Wolckenhauer</u>, 215 F.3d 340, 345 (3d Cir. 2000) (internal quotations and citations omitted). As the Court

9

noted, supra, in the absence of such congressional consent, courts lack jurisdiction over suits for damages against the United States.  See FDIC v. Meyer, 510 U.S. 471, 484-87 (1994). While in certain instances federal employees may be sued in their individual capacities for money damages for constitutional violations, Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971), the Court does not have jurisdiction to entertain such claims against federal agencies, such as the BOP.  Correctional Services Corp. v. Malesko, 534 U.S. 61, 72 (2001) (noting that a "prisoner may not bring a Bivens claim against [a correctional] officer's employer, the United States, or the BOP").  Moreover, because "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," Kentucky v. Graham, 473 U.S. 159, 166 (1985), in the absence of a waiver of sovereign immunity by Congress, a suit for damages against a federal employee in his official capacity must likewise be dismissed.

     Plaintiff has not identified any such act of Congress waiving the BOP's immunity from prisoners' suits for its employees' constitutional violations, and the Court is aware of none.  Accordingly, the Court agrees with Defendants that it lacks jurisdiction over Plaintiff's claims seeking money damages against the BOP and Officer Yeoman in his official capacity for

constitutional violations, and will grant Defendants' motion for summary judgment as to those claims.

### 3. Due Process Claim Against Officer Yeoman in his Individual Capacity

Plaintiff's final claim, asserted against Officer Yeoman in his individual capacity, is the allegation that by confiscating Plaintiff's gym bag without providing Plaintiff with a confiscation form, Officer Yeoman violated Plaintiff's constitutional right to due process.[5] Defendant Yeoman argues that he is entitled to summary judgment as to Plaintiff's claim because Plaintiff did not exhaust his administrative remedies prior to filing this lawsuit as is required by the Prison Litigation Reform Act ("PLRA"). For the following reasons, the Court agrees and will grant Defendant Yeoman's motion for summary judgment.

The PLRA provides in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42

---

[5] As the Court explains in note 4, supra, Plaintiff's due process claim against Defendant Yeoman relates only to Yeoman's confiscation of Plaintiff's gym bag. Plaintiff does not assert that Yeoman had anything to do with the interception of Plaintiff's book or otherwise violated Plaintiff's First Amendment rights. The book was intercepted by the prison's mail room and held by the legal department.

U.S.C. § 1997e(a). "As the statutory language makes clear, § 1997e(a) applies equally to § 1983 actions and to Bivens actions." Nyhuis v. Reno, 204 F.3d 65, 68 (3d Cir. 2000). The PLRA's exhaustion requirement applies to all inmate suits "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Under the Act, the exhaustion of all administrative remedies is mandatory, whether or not the inmate believes that such administrative remedies would be effective and even if the available administrative processes cannot grant the desired remedy. Booth v. Churner, 532 U.S. 731, 739-41 (2001). Enforcement of the PLRA's exhaustion requirement serves the twin goals of "protect[ing] administrative agency authority . . . . [and] promot[ing] efficiency." Woodford v. Ngo, 126 S. Ct. 2378, 2385 (2006). The PLRA's exhaustion requirement furthers these goals by providing the "prisoner who does not want to participate in the prison grievance system" with the "incentive to comply with the system's procedural rules." Id. at 2388.

As the Court of Appeals has recognized, because there "is no express federal law describing the procedural requirements with which prisoners must comply in satisfying § 1997e(a)'s exhaustion requirement," the procedures set out in a prison's administrative grievance program serve as the measure for whether an inmate has

12

exhausted his administrative remedies. Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004). In the case of federal prisoners, the BOP's regulations define the process that a federal inmate must use in "seek[ing] formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The grievance process that a federal prisoner must exhaust prior to filing suit is a multi-stage process, and a prisoner must proceed through each stage in order to satisfy the PLRA's pre-suit exhaustion requirement. See Ghana v. Holland, 226 F.3d 175, 178 (3d Cir. 2000). In brief, the BOP's administrative grievance process requires a prisoner to file an informal complaint with prison staff, to appeal an adverse decision to the prison warden, to appeal from the warden's determination to the BOP's Regional Director, and, finally, to appeal from the Regional Director's decision to the BOP's General Counsel. See id.; see also 28 C.F.R. §§ 542.10, et seq.

In this case, it is clear that Plaintiff's claim regarding Officer Yeoman's alleged violation of his due process rights is subject to the PLRA's administrative exhaustion requirement. See Porter, 534 U.S. at 532 (administrative exhaustion requirement applies to complaints about "particular episodes" of allegedly unconstitutional misconduct by correctional officers). It is also clear that while there is evidence in the record suggesting that Plaintiff appealed his First Amendment-related complaint

13

concerning his confiscated book to the BOP's General Counsel, (Pl.'s Opp'n Br. Ex. 13), Plaintiff did not similarly appeal his complaint about Officer Yeoman's allegedly unconstitutional conduct to the BOP's General Counsel, (Moran Cert. ¶ 4); indeed Plaintiff has neither suggested, nor submitted evidence suggesting, that he appealed his due process complaint concerning the confiscation of his gym bag to the General Counsel's office, as 28 C.F.R. § 542.15(a) expressly requires.[6]  There is, in other words, no disputed question of fact regarding Plaintiff's failure to completely exhaust his administrative remedies in accordance with the clear dictates of the PLRA and the BOP's regulations on administrative grievances.

Plaintiff's argument that the PLRA's administrative exhaustion provision merely requires that an inmate take action sufficient to put a defendant on notice of his claim is contradicted by decisions of the Supreme Court and the Court of Appeals for the Third Circuit, as well as by the language of the PLRA itself.  See Ngo, 126 S. Ct. at 2388; Ghana, 226 F.3d at 181.  The PLRA does not give inmates a choice about whether to

---

[6] The fact that Plaintiff appears to have appealed the Regional Director's decision concerning the interception of his book to the office of the General Counsel does not suggest that he exhausted his administrative remedies with regard to his separate complaint about the confiscation of his gym bag.  The only evidence in the record of Plaintiff's appeal to the General Counsel's office indicates that the only subject of that appeal was the prison's "rejection of The Good Orgasm Guide."  (Pl.'s Opp'n Br. Ex. 13.)

14

take advantage of a prison's administrative grievance process prior to filing suit, and it likewise does not permit an inmate to design his own process for grieving complaints within the prison system.  Rather, a prisoner must exhaust his administrative remedies through the grievance procedures prescribed by the prison before filing suit.  Having determined that there is no factual dispute in this case about Plaintiff's failure to appeal his complaint concerning Officer Yeoman's alleged violation of his due process rights to the BOP's General Counsel, the Court finds that Plaintiff has not complied with section 1997e(a)'s pre-suit exhaustion requirements, and will thus grant Officer Yeoman's motion for summary judgment.  The entry of summary judgment is without prejudice to Plaintiff's right to file a new complaint upon his exhaustion of available administrative remedies.

### III. CONCLUSION

For the reasons explained above, the Court will grant Defendants' motion for summary judgment as to all of Plaintiff's claims.  The Court lacks jurisdiction over Plaintiff's claims under the Federal Tort Claims Act and over the claim that the Bureau of Prisons and Defendant Yeoman in his official capacity have violated Plaintiff's constitutional rights, while the claim that Yeoman has violated Plaintiff's constitutional rights with regard to confiscation of his gym bag is dismissed without

prejudice to filing a new complaint after exhaustion of administrative remedies as required by the PLRA. The accompanying Order will be entered.


**February 27, 2008**          **s/ Jerome B. Simandle**
Date                            JEROME B. SIMANDLE
                                United States District Judge